LAW OFFICE OF
PETER A. ROMERO

Peter A. Romero
promero@romerolawny.com

David D. Barnhorn
dbarnhorn@romerolawny.com

February 3, 2022

**VIA ECF**
Honorable John P. Cronan
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *Rafael Almanzar v. Enterprise Gold Street Parking LLC, et al.*
               <u>Docket No.: 21-cv-06672 (JPC)</u>

Dear Judge Cronan:

       This firm represents Plaintiff Rafael Almanzar in the above-referenced matter against Defendants Enterprise Gold Street Parking LLC and World Tower Parking Garage, LLC (collectively as "Defendants"). Plaintiff brings claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for unpaid overtime wages, for failure to issue timely payment of wages pursuant to NYLL §§ 191, 198(1-a), failure to provide accurate wage statements for each pay period under NYLL § 195(3), and failure to furnish a wage notice upon his hire under NYLL § 195(1). D.E. 1-3. The parties have reached a resolution of this action. Accordingly, Plaintiff now submits this motion for approval, pursuant to <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the parties' settlement agreement with respect to Plaintiff's FLSA claims.[1] The parties' proposed Negotiated Settlement Agreement and Release (the "Agreement") is attached as Exhibit A. Unfortunately, as of this filing, Defendants have not yet been able to execute the parties' Agreement. However, Defendants are expected to provide an executed Agreement to Plaintiff's counsel within the next few business days. Accordingly, Plaintiff will provide the Court with a fully executed copy of the Agreement as an amended exhibit as expeditiously as possible.

**Procedural History**

       On April 9, 2021, Plaintiff filed his Summons and Complaint in the Supreme Court of the State of New York, New York County, which asserted claims under the New York Labor Law. D.E. 1-1. On June 30, 2021, Defendants filed an Answer to the Complaint. D.E. 1-2. On July 20, 2021, Plaintiff filed an Amended Complaint, which added claims under the Fair Labor Standards Act and allegations pertaining to a putative collective action. D.E. 1-3. On

---

[1] The parties do not seek the Court's approval with respect to the settlement of Plaintiff's non-FLSA claims as there is no requirement for the Court to do so. However, although non-FLSA claims do not require the Court's approval, the parties' settlement agreement, attached as Exhibit A, includes the resolution of all of Plaintiff's claims asserted in this lawsuit.

August 6, 2021, Defendants filed a notice of removal to transfer this action to this Court. D.E. 1. On August 12, 2021, the Court referred this matter to the SDNY mediation program. D.E. 9. On August 13, 2021, Defendants filed an Answer to the Amended Complaint. D.E. 10. Prior to mediation, the parties exchanged relevant documents and discovery information, which permitted Plaintiff's counsel to conduct a detailed analysis of Plaintiff's hours worked and compensation received to assess Plaintiff's potential damages.

On December 15, 2021, SDNY Mediator Richard Reice, Esq. conducted a mediation with the parties that, after contentious, arms' length negotiations, ultimately reached a settlement in principle and the parties executed a terms sheet detailing their settlement. Thereafter, the parties negotiated the terms of their formal settlement agreement.

The settlement agreement between the Plaintiff and the Defendants provides for payment of a gross sum of $40,000.00, inclusive of attorneys' fees and costs. Pursuant to the Agreement, Plaintiff will receive a total of $26,403.87 and Plaintiff's counsel will receive a total sum of $13,596.13, consisting of $13,201.93 for attorneys' fees (i.e. 1/3 of the net settlement amount after deducting costs from the gross settlement amount) and $394.20 for litigation costs.

**The Court Should Approve the Settlement Agreement as Fair and Reasonable**

FLSA claims may be dismissed with prejudice under Fed. R. Civ. P. 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-207. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Hernandez v. Merrill Lynch & Co., 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id.

In evaluating a proposed settlement of FLSA claims, courts in this Circuit typically apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The Wolinsky factors require consideration of the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arms'-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Id.

In this case, Plaintiff contends that Defendants employed him as a valet parking attendant from on or about November 2, 2015 until on or about March 12, 2021. During his employment, Plaintiff contends that he worked for Defendants at multiple garages and that, during certain workweeks, Plaintiff worked at both of Defendants' garages during the same workweek. When this occurred, Plaintiff asserts that he received two paychecks at his hourly rates of pay that calculated his hours independently as two separate employers. However, Plaintiff alleges that both corporate Defendants were a single or joint employer operating a common enterprise, in reality constituting one employer with respect to Plaintiff's

employment. As a result, Plaintiff contends that his hours worked should be aggregated between both employers. At certain times during his employment, Plaintiff worked in excess of forty hours per workweek when the hours worked at both garages are aggregated as a single or joint employer. Because Defendants each paid Plaintiff independently, Plaintiff asserts that Defendants paid him for numerous overtime hours at his straight-time rate of pay and failed to pay him at his statutorily-mandated overtime rate of pay of one and one-half times his applicable regular rate of pay for these hours worked. Additionally, Plaintiff learned that Defendants engaged in a rounding policy when processing employee payroll. Under that practice, Defendants allege that they rounded Plaintiff's hours worked to the nearest fifteen minute increment. Plaintiff asserts that this practice, as implemented, was unlawful and deprived him of overtime compensation owed under the FLSA. Defendants deny Plaintiff's allegations.

Critically, the parties have several key disputes that impact liability and damages. Defendants contend that Plaintiff was paid correctly for all hours worked. Specifically, Defendants strenuously contest that they were a single or joint employer and assert that the corporations are separate employers. As such, Defendants dispute that Plaintiff's hours should be aggregated as a single employer. Moreover, Defendants assert that their rounding payroll practices complied with all applicable laws, including the FLSA. In contrast, Plaintiff argues that Defendants' practices were unlawful as implemented with respect his employment. However, the applicable case law considers a variety of factors when assessing whether entities are a single or joint employer and whether an employer's rounding payroll practices are lawful and, as a result, Plaintiff acknowledges that a determination regarding Defendants' employer status and whether their rounding practices are lawful is uncertain. The resolution of both of these crucial disputes – whether the Defendants were a single employer and whether Defendants' rounding payroll practices are lawful – are central to Plaintiff's FLSA claims and both substantially impact the assessment of Plaintiff's alleged damages. Plaintiff's FLSA damages would be significantly reduced – or even eliminated – if he were to lose on one or both of these arguments. Additionally, Defendants contend that Plaintiff is not entitled to liquidated damages, whereas Plaintiff asserts that liquidated damages should be awarded because Defendants cannot establish that the alleged violations, if proven, were part of good faith efforts to comply with the FLSA.

Plaintiff calculated his damages in order to assess his best possible recovery in this litigation. Making all reasonable assumptions in his favor, according to Plaintiff's calculations, Plaintiff's best potential recoveries under the FLSA at trial amounts to $3,719.17 for unpaid FLSA wages and $3,719.17 for FLSA liquidated damages. By comparison, Defendants contend that Plaintiff is not owed any unpaid FLSA wages or any FLSA liquidated damages.

Settling at this stage allows the parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the parties would have engaged in formal written and document discovery, depositions of Plaintiff, Defendants, and likely several non-party witnesses. This settlement also avoids potential partial motions for summary judgment and a time consuming and risky trial, which could result in a months- or years-long delay to obtaining a potential recovery for the Plaintiff, even if he is successful, and avoids potentially facing future appeals. Notably, a trial in this lawsuit is particularly risky because it will likely turn almost entirely upon the credibility of the parties and testimony about how the two

corporations operated and, ultimately, whether Defendants operations are properly considered a single or joint employer or as separate businesses. These determinations will require inherently subjective assessments by the trier of fact. As a result, all parties face a serious risk of losing at trial. Even if Plaintiff were successful on his FLSA claims, but Defendants could prove that they made a good faith effort to comply with the FLSA, Plaintiff would not be entitled to liquidated damages under the FLSA, reducing Plaintiff's available FLSA damages by half. If Defendants could establish that the alleged violations were not willful, Plaintiff's FLSA claims would be subject to a two-year statute of limitations, which would further reduce his unpaid FLSA damages to $1,787.28. Moreover, in light of Defendants' defenses, there is a risk that Plaintiff could ultimately receive nothing at all under the FLSA. Thus, by settling at this stage, Plaintiff ensures that he will receive a recovery in this matter. Moreover, Plaintiff's award under the proposed settlement far exceeds the amount of Plaintiff's best possible recovery under the FLSA for unpaid wages and liquidated damages, even after accounting for attorney's fees and costs.

Accordingly, although there is a possibility that Plaintiff could recover higher damages if the case proceeded to trial under certain non-FLSA claims, there is also the significant possibility that he could receive lower damages, or nothing at all, and as such, the risks and uncertainties discussed above are substantial. Thus, assuming this settlement is approved, Plaintiff will be able to recover the settlement funds more expeditiously, and with more certainty, than a trial judgment.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it. For instance, the release in the Agreement is limited to wage-related claims. The release does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. See Flood v. Carlson Rests. Inc., 2015 WL 4111668, at *1-2 (S.D.N.Y. July 6, 2015); Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 181 (S.D.N.Y. March 30, 2015) (prohibiting releases that "purport to waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues" but notes additional claims may be released in appropriate circumstances); Cheeks, 796 F.3d at 206 (noting judicial approval of settlements is necessary to avoid an "overbroad release" that waives all possible claims and to prevent potential abuse or overreach in settlements). Here, the release is narrowly tailored to release only claims relevant to the instant action. Likewise, the agreement does not contain a confidentiality clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." Flood, 2015 WL 4111668, at *1 (citing Lopez, 96 F. Supp. 3d at 177-181); Cheeks, 796 F.3d at 206 (quoting Lopez, 96 F. Supp. 3d at 177) (noting judicial approval of settlements is necessary to prevent "'highly restrictive confidentiality provisions…in strong tension with the remedial purposes of the FLSA'"); Cortes v. New Creators, Inc., 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) (citing Lopez, 96 F. Supp. 3d at 177-181). Moreover, the parties have not included a non-disparagement clause.

Additionally, the reasonableness of this settlement is also assured by the involvement of a mediator. Indeed, the presence of a mediator "provides assurance that the settlement was not the product of collusion." Bilbao v. LCS Enters. Inc., 2018 WL 1399199, at *2 (S.D.N.Y. Mar. 19, 2018); see also Hernandez v. Anjost Corp., 2013 WL 4145952, at *2 (S.D.N.Y. Aug.

14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 618-619 (S.D.N.Y. 2012) (citing In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 159-160 (S.D.N.Y. 2011)) (explaining parties entitled to a presumption of fairness where mediator facilitated arms-length settlement).  Here, the parties engaged in contentious negotiations requiring the assistance of a mediator to resolve.  Accordingly, the settlement achieved clearly reflects an arms'-length negotiation absent from fraud or collusion and is a reasonable compromise over the contested issues in this matter.

**The Court Should Approve the Requested Attorneys' Fees and Costs as Reasonable**

In addition to assessing the reasonableness of the settlement award, most courts since Cheeks have found that courts "must also assess the reasonableness of any attorneys' fee award." Velasquez v. SAFI-G, Inc., 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing Wolinsky, 900 F. Supp. 2d at 336).  When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing Wolinsky, 900 F. Supp. 2d at 336).  In this case, the portion of the settlement amount attributable to attorneys' fees is $13,201.93, or one-third of the net settlement amount after deducting for litigation costs.

Notably, while Courts may now award attorneys' fees in amounts greater than one-third of the total settlement sum, plus costs, Fisher v. SD Prot. Inc., 948 F.3d 593 (2d Cir. 2020), Courts have traditionally held that approval of attorneys' fees of 1/3 of the settlement sum, plus costs, is reasonable and routinely approve such terms in settlement agreements. Tiro v. Public House Investments, LLC, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); Kochilas v. Nat'l Merchant Servs., Inc., 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases); McDaniel v. City of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage of recovery method is "the trend in this Circuit."); see also Oxley v. Excellent Home Care Servs., LLC, 2020 WL 589581, at *3 (E.D.N.Y. Jan. 8, 2020), report and recommendation adopted, 2020 WL 401772 (E.D.N.Y. Jan. 23, 2020) (citing Romero v. Westbury Jeep Chrysler Dodge, Inc., 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016)) (noting "courts in this Circuit have routinely found an award representing one third of the settlement amount to be reasonable" in FLSA settlements and awarding plaintiff's counsel a fee of 1/3 of the net settlement after costs, plus an award of costs); Yong Yuan Wang v. Mandarin Glen Cove, Inc., 2019 WL 5695910, at *2-3 (E.D.N.Y. Sept. 30, 2019) (citing Romero, 2016 WL 1369389, at *2) (same); Meza v. 317 Amsterdam Corp., 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases); Cregg v. Firstservice Residential N.Y., Inc., Docket No. 15-cv-3876-LB, D.E. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); Najera v. Royal Bedding Co., LLC, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); Rangel v. 639 Grand St. Meat & Produce Corp., 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery, plus costs).  Courts

have held that a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. See Massiah v. MetroPlus Health Plan, Inc., 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Thus, Plaintiff's counsel's requested fees of one-third of the net settlement sum after deducting for litigation costs is certainly reasonable.

Additionally, the reasonableness of the fee for which approval is requested here is further solidified by "[a]pplying the lodestar method as a cross check." Guaman v. Ajna-Bar NYC, 2013 WL 445896, at *1 (S.D.N.Y. Feb. 5, 2013) (citing Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000)). In order to calculate the lodestar check, the Firm multiplied the attorney hours spent on the case by each individual's reasonable hourly rate. See Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007).

Here, the Law Office of Peter A. Romero PLLC is a boutique employment litigation law firm, located at 825 Veterans Highway, Suite B, Hauppauge, New York 11788, with a substantial practice primarily representing plaintiffs in wage and hour matters, including individual, collective action and class action matters, and employment discrimination matters in both state and federal court.

With respect to Peter A. Romero, Esq.'s experience, Mr. Romero graduated from St. John's University School of Law in 2003. He was admitted to practice in New York in November 2003, the United States District Court for the Southern District of New York in August 2004, and the United States District Court for the Eastern District of New York in October 2004. Mr. Romero previously worked for a prominent employment law litigation firm as an associate from July 2004 until January 2009 and as a partner from January 2009 until June 2015. Thereafter, beginning in June 2015 through the present, Mr. Romero has operated his own employment law litigation firm, the Law Office of Peter A. Romero PLLC, as its principle. That firm employs one senior associate, the undersigned, David D. Barnhorn, Esq., another associate, Matthew J. Farnworth, Esq., a paralegal, and an administrative assistant, as well as other support staff as needed. Throughout his legal career, beginning in July 2004 through the present, Mr. Romero has focused his practice almost entirely on employment law litigation, where a majority of his cases have been comprised of individual, collective action and class action wage and hour lawsuits in federal and New York courts. Indeed, Mr. Romero has been appointed as Class Counsel in numerous class action cases in federal and New York courts. Moreover, throughout his career, Mr. Romero has conducted numerous trials and arbitrations on behalf of his clients in employment law disputes, including wage and hour matters. Finally, while employed as a partner at another employment law litigation firm from January 2009 until June 2015, Mr. Romero was responsible not only for his own case load of employment law litigation matters, but also for supervising and revising and approving the work of four associates who each had their own case load of employment law litigation matters, including wage and hour matters. Mr. Romero is also an active member of the National Employment Lawyers Association, an entity that focuses on employee rights in the workplace and whose membership consists of lawyers that primarily, or exclusively, represent employees. Mr. Romero has also been selected by *The Best Lawyers in America* for his high caliber of work in the practice area of employment law each year since 2013 and as a Super Lawyer in category of "Employment Litigation" for the years 2019, 2020 and 2021.

The undersigned, David D. Barnhorn, Esq., graduated *cum laude* from Hofstra University Maurice A. Deane School of Law in 2012. I was admitted to practice in New Jersey and the United States District Court for the District of New Jersey in November 2012, in New York State in 2013, and the United States District Courts for the Eastern and Southern Districts of New York in 2014. I have been employed as a senior associate for this Firm since April 2018. Prior to joining this firm, I worked as an associate at two prominent employment law litigation firms from November 2012 until April 2018. Throughout my legal career, beginning in November 2012 through the present, I have focused my practice almost entirely on employment law litigation, where a majority of my cases have been comprised of individual, collective action and class action wage and hour lawsuits in New York and New Jersey state and federal courts. Additionally, the undersigned has been appointed as Class Counsel in multiple class action cases. Throughout my time as an associate, I have been responsible for actively handling cases in pre-litigation stages, arbitration, administrative agencies and in litigation in state and federal courts from their inception through trial and resolution. Moreover, during my career, I have conducted numerous trials and arbitrations on behalf of my clients in employment law disputes, including wage and hour matters. Finally, I have been selected as a Rising Star by Super Lawyers as an "Employment & Labor Attorney" for the years 2016, 2017, 2018, 2019, 2020 and 2021.

Matthew J. Farnworth, Esq. graduated from Pace University School of Law in 2016. He was admitted to practice in New York State, as well as the New York Eastern and Southern District Courts in 2018, in New Jersey State Court in 2019, and the Federal District of New Jersey in 2020. He has been employed as an associate for this Firm since August 2021. Prior to joining this firm, he worked as a senior associate an associate at two prominent employment law litigation firms from May 2018 until August 2021. Throughout his legal career, beginning in April 2018 through the present, he has focused his practice almost exclusively on employment law litigation, where a majority of his cases have been comprised of individual, collective action and class action wage and hour lawsuits in New York and New Jersey state and federal courts. Throughout his time as an associate, he has been responsible for actively handling cases in pre-litigation stages, arbitration, administrative agencies, as well as handling litigation in both state and federal courts.

Here, if Plaintiff's counsel were seeking fees pursuant to the lodestar, Plaintiff would seek hourly rates of $400.00 per hour for Peter A. Romero, Esq., $300.00 per hour for the undersigned, David D. Barnhorn, Esq., $250.00 per hour for Matthew J. Farnworth, Esq., and $100.00 per hour for the firm's paralegal, Angelica Villalba. "A reasonable hourly rate is 'the rate a paying client would be willing to pay,' 'bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'" Spain v. Kinder Stuff 2010 LLC, 2015 WL 5772190, at *8 (E.D.N.Y. Sept. 29, 2015) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008)). "The reasonable hourly rates should be based on rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Id. (quoting Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal quotation marks omitted)). Here, based on the customary rates charged in this district and the experience of the attorneys responsible for this matter, hourly rates of $400.00 per hour for Mr. Romero, $300.00 per hour for the undersigned, $250.00 for Mr. Farnworth and $100.00 per hour for the firm's paralegal, Ms. Villalba, are reasonable. Carrera v. DT Hosp. Grp., 2021 WL 6298656, at *12 (S.D.N.Y. Nov. 1, 2021),

report and recommendation adopted, 2021 WL 6298654 (S.D.N.Y. Dec. 7, 2021) (approving Peter A. Romero's rate of $400.00 per hour and David D. Barnhorn's rate of $300.00 per hour); HRB Prof'l Res. LLC v. Bello, No. 17-CV-7443 (KMK), 2018 WL 4629124, at *8 (S.D.N.Y. Sept. 27, 2018) (collecting cases) (awarding a partner a rate of $440.00 per hour and citing approvingly of cases awarding partners and experienced litigators rates of $400.00 to $600.00 per hour and associates rates of $300.00 per hour); Pineda v. Frisolino, Inc., 2018 WL 3628898, at *2 (S.D.N.Y. July 30, 2018) (approving rates for partner and senior associate at $400.00 per hour and other associates at $300.00 per hour in FLSA and NYLL litigation); Sara Designs, Inc. v. A Classic Time Watch Co. Inc., 2018 WL 2976009, at *4 (S.D.N.Y. June 13, 2018) (approving rate of $450.00 per hour for partner, $325 for senior associate, and $275 per hour for junior associate); Payne v. Kirkland, 2017 WL 5952707, at *3-4 (S.D.N.Y. Nov. 30, 2017) (noting partners in small firms have been awarded rates of $550 to $650 per hour, and awarding partner with 13 years of specialized experience in civil rights cases a rate at $475.00 per hour); Polit v. Glob. Foods Int'l Corp., 2017 WL 1373907, at *8 (S.D.N.Y. Apr. 13, 2017) (awarding $300.00 to associate with four years of experience who acted as lead counsel in FLSA case); Torres v. Gristede's Operating Corp., 2012 WL 3878144, at *3 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 Fed. Appx. 1 (2d Cir. 2013) (citing Clover v. Shiva Realty of Mulberry, Inc., 2011 WL 1832581, at *1 (S.D.N.Y. May 13, 2011)) (noting, ten years ago, in FLSA and NYLL matter that "[c]onsistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time."); Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., 2010 WL 4159391, at *8 (S.D.N.Y. Sept. 30, 2010) (citing LV v. New York City Dept. of Educ., 700 F. Supp. 2d 510, 518-525 (S.D.N.Y 2010)) (noting in FLSA and NYLL matter that "[t]he rates sought by plaintiffs' counsel ($400 for partners, $350 for litigation counsel, $300 for associates with three to seven years of experience, and $200 for associates with one to two years of experience) are consistent with (or lower than) the rates used in other cases involving attorney fee awards..."); Saunders v. City of New York, 2009 WL 4729948, at *8 (S.D.N.Y. Dec. 9, 2009) (approving rate, twelve years ago, of $425.00 per hour for partner, $300 for senior associate, and $250 per hour for junior associate with approximately four years of experience in FLSA matters); New York Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc., 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (approving rate of $425.00 per hour for partners and $300.00 per hour for associates in ERISA matter); New York City Dist. Council of Carpenters Pension Fund v. Quantum Const., 2008 WL 5159777, at *13 (S.D.N.Y. Dec. 9, 2008) (approving rate of $425.00 per hour for partners and $300.00 per hour for associates in ERISA matter); see also Baizan Guerrero v. 79th St. Gourmet & Deli Inc., 2019 WL 4889591, at *12 (E.D.N.Y. Sept. 10, 2019), report and recommendation adopted, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019) (awarding hourly rate for paralegal at $100.00 in FLSA action); Quito v. El Pedragal Rest., Corp., 2017 WL 2303979, at *2 (E.D.N.Y. May 26, 2017) (awarding hourly rate for paralegal at $100.00 in FLSA action); Lopez v. PMMT Inc., 2016 WL 7633264, at *16 (E.D.N.Y. Aug. 25, 2016), report and recommendation adopted, 2017 WL 27943 (E.D.N.Y. Jan. 3, 2017) (awarding hourly rate for paralegal at $100.00 in FLSA action); Gesauldi v. Dan Yant Inc., 6 F. Supp. 3d 264, 274 (E.D.N.Y. 2014) (collecting cases) (awarding hourly rate for paralegal at $100.00 and noting "[v]arious courts in this district have approved this rate for paralegal services."); Apolinar v. Glob. Deli & Grorcery, Inc., 2013 WL 5408122, at *16 (E.D.N.Y. Sept. 25, 2013) (awarding hourly rate for paralegal at $100.00 in FLSA action).

Here, Plaintiff's counsel investigated the Plaintiff's claims, conducted a detailed inquiry regarding Plaintiff's job duties, hours worked and compensation received, and Defendant's compensation policies, submitted an Amended Complaint after further investigation identified additional claims, engaged in relevant discovery, created an assessment of Plaintiff's damages, engaged in mediation, and subsequently negotiated the parties' formal settlement agreement.  Due to the contingent nature of the case, Plaintiff's counsel undertook these efforts with no ultimate guarantee of compensation and facing substantial risk given the inherent challenges faced by establishing that the corporate defendants are a single or joint employer.  Plaintiff's counsel was zealous in the pursuit of Plaintiff's litigation objectives and secured a favorable result on the Plaintiff's behalf.  The settlement will be made available to the Plaintiff without the uncertainty and delay of trial.

As a result, the Firm expended a total of 41.7 billable hours on this matter, as evidenced by counsel's contemporaneous billing records, which are annexed hereto as Exhibit B.  Thus, Plaintiff's attorneys' fees in this matter, when calculated pursuant to the lodestar, amount to $10,805.00.  Here, although Plaintiff's lodestar is less than the amount of fees requested under the standard contingency fee method, Plaintiff's counsel's requested fees are well within the range approved by courts when applying a moderate lodestar multiplier.

Where, as here, the lodestar is less than the contingency fee requested, after reviewing the lodestar the Court generally also applies a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. See In re Platinum & Palladium Commodities Litig., 2015 WL 4560206 (S.D.N.Y. July 7, 2015).  Courts have awarded multipliers up to eight (8) times the lodestar and in some cases they have awarded multipliers that are even higher. See Beckman v. KeyBank, N.A., 293 F.R.D. 467, 481-482 (S.D.N.Y. 2013) (collecting cases); Zeltser v. Merrill Lynch & Co., 2014 WL 4816134, at *9 (S.D.N.Y. Sept. 23, 2014) (collecting cases); see also Riveras v. Bilboa Rest. Corp., Docket No. 17-cv-04430, D.E. 74 (S.D.N.Y. Dec. 14, 2018) (Memorandum and Order approving a lodestar multiplier of 6.7); see also Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012) (noting "[c]ourts regularly award lodestar multipliers from 2 to 6 times the lodestar" and awarding multiplier of 3.04); Bravo v. Palm West Corp., Docket No. 14-cv-9193, D.E. 62 (S.D.N.Y. Mar. 11, 2016) (awarding $500,000.00 fee, representing 3.5 multiplier in FLSA/NYLL class action); Fleisher v. Phoenix Life Ins. Co., 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015) (awarding multiplier of 4.87); Capsolas v. Pasta Resources, Inc., 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) (awarding multiplier of 3.96); Toure v. Amerigroup Corp., 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) (awarding multiplier of 3.53); Davis v. J.P. Morgan Chase & Co., 827 F. Supp. 2d 172, 184-186 (W.D.N.Y. 2011) (awarding multiplier of 5.3); Khait v. Whirlpool Corp., 2010 WL 2025106, at *8-10 (E.D.N.Y. Jan. 20, 2010) (awarding multiplier of 3.3); Maley v. Del Glob. Techs. Corp., 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (finding "the modest multiplier of 4.65 [ ] fair and reasonable.").  Plaintiff's counsel's representation in this matter is subject to a contingency retainer, creating an inherent risk that this firm could receive no compensation for its efforts in this action if the lawsuit were not successful.  Given the legal hurdles that must be overcome to establish that Defendants are a joint or single employer, a necessary element to proving Plaintiff's overtime claims, Plaintiff's risk of losing is serious and exceeds the risks associated with a typical settlement.  Moreover, Plaintiff's counsel provided quality representation by zealously pursuing Plaintiff's litigation objectives

and obtaining a favorable settlement that far exceeds his damages under the FLSA. Here, the multiplier requested is approximately 1.22, which is well within the range granted by courts in this circuit.

While the multiplier represents a greater recovery than Plaintiff's counsel's lodestar, this should not result in penalizing counsel for achieving an early settlement. See Zeltser, 2014 WL 4816134, at *10 (citing Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005)) ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits."); Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) (noting that "the lodestar method does not reward early settlement" and that "counsel should [not] necessarily receive a lesser fee for settling a case quickly"); Beckman, 293 F.R.D. at 482 (noting applying multiplier is proper as achieving an early settlement "should not result in penalizing plaintiffs' counsel"); see also Fisher v. SD Prot. Inc., 948 F.3d 593, 603 (2d Cir. 2020) (quoting Sand v. Greenberg, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010)) ("Fee awards in wage and hour cases should 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'"); Zeltser, 2014 WL 4816134, at *8 (quoting Sand, 2010 WL 69359, at *3; and citing Reyes v. Altamarea Grp., LLC, 2011 WL 4599822, at *1 (S.D.N.Y. Aug. 16, 2011)) ("Fee awards in wage and hour cases are meant to 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" and "The FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights.").

Additionally, the Court should review the public policy considerations concerning the manner in which attorneys' fees are assessed. Since a reasonable value of the case had already been obtained in a settlement, the only purpose of continuing this litigation would have been to build up attorneys' fees. This would forestall a resolution that could have been achieved earlier. While the undersigned would never continue with a case to build up fees beyond the point where a reasonable settlement is reached, other attorneys who do wage-and-hour litigation very well might. Reducing attorneys' fees in single plaintiff FLSA cases below one third would disincentivize early resolution of these cases. As FLSA cases have become a significant portion of the federal docket, the efficient and early resolution of these cases is in the best interests of public policy. Thus, the amount of attorneys' fees sought – $13,201.93 – is a reasonable fee in this action.

Lastly, Plaintiff's counsel seeks reimbursement for $394.20 in advanced litigation costs, representing $210.00 for the filing fee for the Complaint in the Supreme Court of the State of New York and $184.20 for service of process for the Summons and Complaint. A copy of the applicable invoice for service of process are attached as Exhibit C.

Accordingly, Plaintiff's counsels' requests for attorneys' fees in the amount of $13,201.93 and expenses in the amount of $394.20 should be approved as reasonable.

In light of the foregoing, the parties respectfully request that the Court approve the parties' settlement and dismiss this matter with prejudice, while maintaining jurisdiction to enforce the terms of the settlement. A proposed Stipulation and Order of Final Dismissal With Prejudice of Plaintiff's Claims is annexed as Exhibit A to the parties' Agreement.

Respectfully submitted,

*David Barnhorn*

_____
DAVID D. BARNHORN, ESQ.

C:   All Counsel of Record *via* ECF